UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELSTER SOLUTIONS, LLC , a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>THE CITY OF SEATTLE, a municipal corporation; SEATTLE CITY LIGHT, a publicly owned utility; MUCKROCK FOUNDATION, INC., a Massachusetts corporation; and PHIL MOCEK, an individual,<br><br>Defendants. | CASE NO. 2:16-cv-00771<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION** |

## I.     INTRODUCTION

Pursuant to Federal Rule of Procedure 65 ("FRCP 65"), Local Court Rule 65 ("LCR 65"), and RCW 42.56.540, Plaintiff Elster Solutions, LLC ("Elster") seeks immediate injunctive relief enjoining Defendants The City of Seattle ("the City") and Seattle City Light ("SCL") from disclosing Elster's trade secrets, proprietary information and other categories of sensitive confidential information that are protected from public disclosure under Washington's Uniform Trade Secrets Act ("UTSA"), RCW Chapter 19.108, and the Washington Public Records Act ("PRA"), RCW Chapter 42.56.  Specifically, Elster respectfully requests this Court to issue a temporary restraining order and an order to show cause why a preliminary injunction should not issue, enjoining Defendant SCL from publically disclosing an un-redacted copy of Elster's bid

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 1
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

proposal (the "Proposal) submitted in response to SCL's Request For Proposals, "SCL-RFP3404, Advanced Metering Infrastructure (the "RFP") TO Defendant Phil Mocek ("Mocek") and/or Defendant MuckRock Foundation, Inc. ("MuckRock," and collectively the "MuckRock Defendants").

Elster's urgent request for injunctive relief arises and is necessary because the MuckRock Defendants made a public records request for copies of all bid proposals submitted in response to SCL's RFP, and SCL has represented that it intends to disclose such records, in an un-redacted format, to the MuckRock Defendants on May 26, 2016 unless enjoined by a court-issued injunction. Elster can provide SCL with redacted portions of its Proposal with regard to information that is exempt from disclosure under the PRA – which constitutes a small, limited portion of the Proposal – and has requested SCL to not disclose any un-redacted material. SCL has indicated its position that it requires a "court order" to withhold any information from disclosure because the "requestor [i.e., the MuckRock Defendants] will not accept redacted bids in response to his request." Accordingly, Elster requests that the Court issue a temporary restraining order, followed by issuance of a preliminary injunction, enjoining SCL from disclosing an un-redacted copy of Elster's Proposal.

## II. SUMMARY OF FACTS & PROCEDURAL BACKGROUND

### A. Elster is a leader in the Energy Metering Industry

Elster, a division of Honeywell International Inc. since December 2015, is a global leader in electrical metering systems, including "smart" meters and related software and data analytics. Elster is a leading technology innovator in a highly competitive global market for energy management software solutions. Elster's innovative equipment, technology and systems are the result of significant investments of time, resources and cost. [*See* Declaration of Robert Henes ("Henes Decl."), ¶ 6].

///

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 2
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

### B. SCL Issued a RFP for Advance Metering Infrastructure

In November of 2014, Defendant SCL issued the subject RFP, inviting interested bidders to submit proposals for the delivery and implementation of an Advanced Metering Infrastructure ("AMI") solution. More specifically, SCL's RFP called for a comprehensive AMI design and solicited price quotes for "implementing a communications system, electric meters, water communications modules and an information system for the management and control of the [SCL's] communications network and endpoint devices." [Henes Decl., ¶ 7].

### C. Elster's Proposal Response to the SCL RFP Contained Trade Secrets and Other Sensitive, Confidential Proprietary Information

In January of 2015, Elster submitted a bid proposal in response to the SCL's RFP. Elster's Proposal contained 15 separate sections, plus 28 attachments. [Henes Decl., ¶ 8; Declaration of Allen W. Estes, III ("Estes Decl.") at ¶ 8 and the Proposal's Table of Contents attached thereto as **Exhibit D** and incorporated herein]. As required to respond effectively to the RFP, Elster's Proposal contained Elster's trade secrets and other highly confidential and sensitive proprietary information. For instance, Elster's Proposal contains its detailed AMI design, including (but without limitation) technology trade secrets concerning the components, configurations and methodologies for Elster's smart meter technology, as well as Elster's "Roadmap" for its short-term and long-term smart grid development plans. Certain sensitive, personally identifiable information is also included in the Proposal. Further, the Proposal contains highly proprietary pricing data, including information for Elster's hardware, software and services based on pricing formulae, confidential market research data compiled and developed at Elster's significant expense.

Ultimately, Elster's Proposal was not the successful bid. Rather, SCL announced that it selected Landis+Gyr (a Switzerland-based company, and a subsidiary of the Toshiba Corporation) as the lowest responsible bidder to the RFP. [Henes Decl., ¶ 3].

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 3
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

**D. SCL Received a Citizen's Public Record Disclosure Request for all RFP Proposals**

On April 26, 2016, SCL's Public Disclosure Officer, Stacy Irwin, sent Elster via email a "third party notification of a public disclosure request" stating that "Phil Mocek from MuckRock has made a public disclosure request for "Proposals that were submitted for 'SCL-RFP-3404, Advanced Metering Infrastructure.' *Your proposal will be provided in response to this request*." [Henes Decl., ¶ 29; Estes Decl., ¶ 9 and **Exhibit E** attached thereto and incorporated herein (emphasis added)].

Accordingly, Elster responded to SCL by letter dated May 4, 2016, stating in pertinent part:

> Elster Solutions, now part of Honeywell, submitted a proposal on Jan 9, 2015 in response to the above referenced SCL opportunity, and while the majority of the information included in our proposal is not considered confidential or proprietary, it does contain information specific to Elster's business practices and the proposed SCL solution, including product/service pricing, named personnel, and a roadmap of future planned development, that if made available to our competitors would put Elster at a competitive disadvantage and could result in financial harm. For this reason we request the following sections/attachments be withheld from release in their entirety:
>
> 1. Proposal Section 6, Proposed Solution;
> 2. Proposal Section 10, Project Team;
> 3. Proposal Section 14, Pricing Response;
> 4. Proposal Attachment #22, Roadmap

[Estes Decl. at ¶ 10 and **Exhibit F** attached thereto and incorporated herein].

SCL's subsequent May 4th response indicated that Elster should submit redactions to the requested material and that SCL would show the redacted versions to the requestor, but that a court injunction would be necessary to prevent disclosure if the requestor would not accept the redactions. [Estes Decl. at ¶ 11 and **Exhibit G** attached thereto and incorporated herein].

On May 5, 2016, Elster submitted redacted information to SCL. Of 15 separate sections and 28 attachments to Elster's Proposal, Elster made limited redactions to only some of these Sections and Attachments. The limited redactions proposed by Elster are necessary to preserve the confidentiality of Elster's business practice trade secrets, product/service pricing, project

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 4
(2:16-cv-00771)

**GORDON & REES LLP**
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

team expertise and a "roadmap" of Elster's future development plans. [Estes Decl., ¶ 12 and **Exhibit H** thereto and incorporated herein; Henes Decl., ¶ 8 and **Exhibit A** thereto and incorporated herein].

### E. SCL Intends to Disclose Elster's Proposal, *Un-Redacted*

By email dated May 11, 2016, SCL notified Elster that "our requestor will not accept redacted bids in response to his request. This means that you would need to file an injunction with the court to prohibit disclosure. I am extending the deadline for the requestor to May 26, 2016 so an injunction would need to be received by COB, May 25, 2016." [Estes Decl. at ¶ 13 and **Exhibit I** attached thereto and incorporated herein].

### F. Notice Given to SCL Pursuant to Rule 65

As set forth in the FRCP Rule 65(b)(1)(B) certification by attorney Allen W. Estes, III, a partner at Gordon & Rees LLP, and counsel for Elster, filed concurrently with the instant Motion, Mr. Estes contacted SCL's counsel by telephone at approximately 11:30 a.m. on Tuesday, May 24, 2016. Mr. Estes indicated (i) that the Gordon & Rees represents Elster with respect to the dispute relating to disclosure of Elster's confidential records; (ii) that Elster intends to file an action in federal court, Washington's Western District, to seek a TRO and preliminary injunction preventing disclosure of documents containing Elster's trade secrets, proprietary information and other categories of information pursuant to the PRA, RCW Chapter 42.56, and Washington's UTSA, RCW Chapter 19.108; (iii) that Elster's papers would be e-filed with the court before close of business on Wednesday, May 25th; (iii) and that Elster's counsel would forward via email copies of all papers filled with the court. In addition, Mr. Estes emailed Defendants MuckRock and Mocek regarding the same information outlined above, and attached copies of the Complaint and moving papers relating to the instant motion. [Estes Declaration re: FRCP Rule 65 Certification, at ¶¶ 2-7, and **Exhibits B** and **C** thereto].

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 5
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

## III. LAW AND ARGUMENT

### A. Legal Standard

Pursuant to Rule 65, a court may issue a temporary restraining order upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). "The purpose of temporary injunctive relief is to preserve the status quo until the hearing on an application for the underlying preliminary injunctive relief." *Cascade Yarns, Inc. v. Knitting Fever, Inc.,* 2014 U.S. Dist. LEXIS 147763, *5-6 (W.D. Wash. Oct. 16, 2014) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974)).

The standard for issuing a temporary restraining order is the same as that for issuance of a preliminary injunction. *See B.I.C. v. Asher,* 2016 U.S. Dist. LEXIS 32647. *14-15 (W.D. Wash. Feb. 19, 2016) (*citing Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a temporary restraining order or preliminary injunction, a plaintiff must establish (1) a likelihood of success on the merits, (2) a likelihood to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in the plaintiff's favor, and (4) issuance of the preliminary injunction is in the public interest. *Id.* (*citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).*

In the Ninth Circuit, "a plaintiff may also qualify for a preliminary injunction by showing that there are serious questions going to the merits of his claim and that the balance of hardships tips sharply in his favor, so long as the irreparable harm and the public interest factors in *Winter* are also met." *Id.* (*citing Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d at 1201). A stronger showing on one of these four elements may offset a weaker showing on another, but the movant must nonetheless "make a showing on all four prongs." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 6
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

## III. LAW AND ARGUMENT

### A. Legal Standard

Pursuant to Rule 65, a court may issue a temporary restraining order upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). "The purpose of temporary injunctive relief is to preserve the status quo until the hearing on an application for the underlying preliminary injunctive relief." *Cascade Yarns, Inc. v. Knitting Fever, Inc.,* 2014 U.S. Dist. LEXIS 147763, *5-6 (W.D. Wash. Oct. 16, 2014) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974)).

The standard for issuing a temporary restraining order is the same as that for issuance of a preliminary injunction. *See B.I.C. v. Asher,* 2016 U.S. Dist. LEXIS 32647. *14-15 (W.D. Wash. Feb. 19, 2016) (*citing Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a temporary restraining order or preliminary injunction, a plaintiff must establish (1) a likelihood of success on the merits, (2) a likelihood to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in the plaintiff's favor, and (4) issuance of the preliminary injunction is in the public interest. *Id.* (*citing Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).

In the Ninth Circuit, "a plaintiff may also qualify for a preliminary injunction by showing that there are serious questions going to the merits of his claim and that the balance of hardships tips sharply in his favor, so long as the irreparable harm and the public interest factors in *Winter* are also met." *Id.* (*citing Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d at 1201). A stronger showing on one of these four elements may offset a weaker showing on another, but the movant must nonetheless "make a showing on all four prongs." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 6
(2:16-cv-00771)

**GORDON & REES** LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

**B. Elster has a Substantial Likelihood of Success on the Merits.**

Elster's Complaint, filed concurrently with the instant Motion, asserts three relevant counts aimed at preventing SCL from wrongfully revealing Elster's confidential and proprietary information: a claim for relief under Washington's Uniform Trade Secrets Act; claims for declaratory and injunctive relief under Washington's Public Records Act; and an equitable claim for an injunction.  This legal action is necessary due to SCL's representation that it intends to disclose an un-redacted copy of Elster's Proposal (because the requestor "will not accept redacted bids in response to his request") unless Elster obtains an injunction to prohibit disclosure.  Elster is substantially likely to succeed on the merits of its claims.

**C. Threatened disclosure of Elster's trade secrets is a violation of the Uniform Trade Secrets Act.**

Washington's Uniform Trade Secrets Act (R.C.W. 19.108.010, et seq., the "UTSA") provides a statutory cause of action for misappropriation of trade secrets, and authorizes a court to enjoin "actual or threatened" misappropriations of trade secrets. RCW § 19.108.020(1); *see also Stoncor Grp., Inc. v. Campton*, No. C05-1225JLR, 2005 U.S. Dist. LEXIS 49077, at *13 (W.D. Wash. Aug. 22, 2005).

    1.    **Elster's Proposal Contains Trade Secrets**

The facts and law support a finding that, among other information contained in the Proposal, Elster's pricing information are protected trade secrets.  The USTA defines the term "trade secret" as follows:

> "Trade Secret" means information, including a formula, pattern, compilation, program, device, method, technique or process that:
>
> (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 7
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

RCW § 19.108.010(4); s*ee also Pac. Aero. & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1200, 2003 U.S. Dist. LEXIS 22016, *33-34 (E.D. Wash. 2003). "The definition of a 'trade secret' is a matter of law under the UTSA, but the determination of whether specific information is a trade secret is a factual question."  *West v. Port of Olympia*, 146 Wn.App. 108, 120, 192 P.3d 926 (2008), *citing Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 971 P.2d 936 (1999).

"A trade secret must derive independent economic value from not being known to or generally ascertainable by others who can obtain economic value from their disclosure or use." *Woo v. Fireman's Fund Ins., Co.,* 137 Wn.App. 480, 489, 154 P.3d 236 (2007), *rev'd in part on other grounds*, 161 Wn.2d 43, 164 P.3d 454 (2007).  Further, for a trade secret to exist, it "must not be readily ascertainable by proper means from some other source, including the product itself. *See Petters v. Williamson & Assocs*., 2003 Wash. App. LEXIS 277, *16 (Wash. Ct. App. Feb. 24, 2003) (*citing Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 49-50, 738 P.2d 665 (1987). Additionally, "the party seeking to protect documents as trade secrets must show that it made reasonable efforts to maintain the secrecy of the materials." *McCallum v. Allstate Prop. & Casualty Inc., Co.,* 149 Wn.App. 412, 425, 204 P.3d 944 (2009), *citing Woo*, 137 Wn.App. at 490.

Here, the information that would be disclosed in un-redacted portions of Elster's Proposal are "trade secrets" as defined by RCW § 19.08.010(4).  Elster's Proposal for its AMI design includes detailed information concerning the components, configurations and methodologies for Elster's smart meter technology, as well as a "Roadmap" for Elster's short-term and long-term smart grid business development plans.  Further, the Proposal contains highly proprietary pricing data, including information for Elster's hardware, software and services based on pricing formulae, confidential market research data.  Such confidential information has independent economic value derived from the fact that it is not generally known to or ascertainable by the public at large or Elster's competitors.  In addition, these trade secret assets result directly from

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 8
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

Elster's significant investment of time, resources and expense over a substantial period of time. [Henes Decl., ¶¶ 8-26]. Furthermore, as standard company practice, Elster goes to significant lengths to protect this information from disclosure to the public at large or to its business competitors. Elster places notices on all confidential documents advising of proprietary information. Elster employees and agents must sign confidentiality and non-disclosure agreements. All customer agreements likewise include confidentiality notices. [Henes Decl., ¶¶ 27-28].

### 2. Threatened Misappropriation.

Misappropriation of a trade secret occurs when a person discloses or uses a trade secret which the person knew, or had reason to know, was "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." RCW § 19.108.010(2)(b)(ii)(B). More specifically, Washington's USTA defines "misappropriation" as follows:

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> (i) Used improper means to acquire knowledge of the trade secret; or
>
> (ii) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was (A) derived from or through a person who had utilized improper means to acquire it, (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> (iii) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

RCW 19.108.010(2).

SCL's disclosure of the entire contents of Elster's RFP Proposal in *un-redacted* form – and SCL's representations make clear an intent to do so "unless … [Elster has] obtained and the

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 9
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

City has been served with a court injunction prohibiting disclosure" – would constitute a misappropriation of Elster's trade secrets, as a disclosure without Elster's express or implied consent to third parties unbound by any duty of confidentiality.

### D. An Un-redacted Disclosure Will Violate the Public Records Act

Disclosure of Elster's entire, *un-redacted* Proposal would violate the PRA because the redacted information falls within one or more disclosure exemptions under the statute.

#### 1. The PRA's Disclosure Exemptions & Redaction Requirement

"The PRA is a 'strongly worded mandate for broad disclosure of public records.'" *Resident Action Council v. Seattle Housing Authority*, 177 Wn.2d 417, 327 P.3d 600 (2013) (*citing Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)).[1]   But the PRA's mandate for broad disclosure is not absolute.  The PRA contains numerous exemptions that protect certain information or records from disclosure.  The PRA also expressly incorporates other statutes which "exempt[] or prohibit[] disclosure of specific information or records." RCW 42.56.070(1).  In short, where another statute prohibits disclosure of a requested record, such prohibition forecloses disclosure of the record pursuant to a PRA request.

The PRA also requires agencies ***to redact*** exempt portions of records if doing so renders the records' remaining portion into one that is outside the scope of the exemption.  *See Resident Action Council v. Seattle Housing Authority*, 177 Wn.2d 417; *see also PAWS II*, 125 Wn.2d at 261 ("Portions of records which do not come under a specific exemption must be disclosed."); *Hearst*, 90 Wn.2d at 132 (noting that exemptions are "inapplicable to the extent that exempt materials in the record can be deleted").

---

[1] The PRA requires state and local agencies to "make available for public inspection and copying all public records, unless the record falls within the specific exemptions of [the PRA] or other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56..070(1).  A "public records" is defined broadly to include "any writing containing information relating to the conduct of government or [a governmental function]" that is "prepared, owned, used, or retained" by any state or local agency.  RCW 42.56.010(3).

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 10
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

### 2. The PRA's "Other Statute" Exemption for USTA Trade Secrets

As stated above, the PRA explicitly incorporates "other statutes" into its list of applicable exemptions from disclosure. RCW 42.56.070(1); *see also Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 261-262, 884 P.2d 592 ("*PAWS II*"). The PRA's "other statutes" provision creates a PRA exemption for any "other statute which exempts or prohibits disclosure of specific information or records."

Specifically pertinent to the instant Motion, the PRA incorporates provisions from trade secret statutes to exempt protected information from disclosure. The Washington Supreme Court in *PAWS II* expressly held that the USTA, RCW Chapter 19.108, is an "other statute" that provides a basis for an agency or third-party under RCW 42.56.540, to claim an exemption. *PAWS II*, 125 Wn.2d at 262-263; *see also Evergreen Freedom Foundation v. Locke*, 127 Wn.App. 243, 110 P.3d 858 (2005); *ACLU v. City of Seattle*, 121 Wn. App. 544, 556-57, 89 P.3d 295 (2004) (citing *PAWS II*). As stated by the Washington Supreme Court, ***"[t]he Public Records Act is simply an improper means to acquire knowledge of a trade secret."*** *PAWS II*, 125 Wn.2d at 262 (emphasis added).**2**

As discussed above, certain material which Elster proposes to redact clearly meet the "trade secret" definition. A trade secret does not somehow lose its status as confidential when it

---

2 As noted in by the *PAWS II* Court, the Washington Legislature has separately emphasized the importance of protecting trade secret confidentiality:

> The legislature finds that public health and safety is promoted when the public has knowledge that enables members of the public to make informed choices about risks to their health and safety. Therefore, the legislature declares as a matter of public policy that the public has a right to information necessary to protect members of the public from harm caused by alleged hazards to the public. The legislature also recognizes that protection of trade secrets, other confidential research, development, or commercial information concerning products or business methods promotes business activity and prevents unfair competition. Therefore, the legislature declares it ***a matter of public policy that the confidentiality of such information be protected and its unnecessary disclosure be prevented***.

RCW 4.24.601 (emphasis added); *see also PAWS II*, 125 Wn.2d at 263.

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 11
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

is submitted to a state or local agency.  *See Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 52, 738 P.2d 665 (1987).

In addition, RCW 42.56.270(11) provides an exemption for "Proprietary data, trade secrets, or other information that relates to: (a) A vendor's unique methods of conducting business; (b) data unique to the product or services of the vendor … .".  And as described above, the information Elster seeks to protect reveal Elster's unique business methods, product and service details, pricing data and methodology, and accordingly are exempt under RCW 42.56.270(11) as well.

### 3. Price Terms and Pricing Information are exempt from disclosure under RCW 42.56.270(1) as valuable formulae and/or research data

The PRA's exemption for "valuable formulae" or research data excludes from public inspection and copying the following:

> The following financial, commercial, and proprietary information is exempt from disclosure under this chapter:
>
> (1) Valuable formulae, designs, drawings, computer source code or object code, and research data obtained by any agency within five years of the request for disclosure when disclosure would produce private gain and public loss.

RCW 42.56.270(1).  The purpose of RCW 42.56.270(1) is to "prevent private gain derived from the exploitation of potentially valuable intellectual property created for public benefit. *Evergreen Freedom Fund v. Locke*, 127 Wn.App. 243, 249, 110 P.3d 858 (2005), *citing Progressive Animal Welfare Soc'y v. Univ. of Wash.,* 125 Wn.2d 243, 255, 884 P.2d 592 (1994).

Here, Elster's Proposal includes information and data that squarely fall within the PRA's "valuable formulae," "designs" or "research data" exemptions.  Elster's Proposal contains financial, commercial, and proprietary information that was developed and compiled specifically for the purpose of bidding on a municipal project.  For instance, this specific exemption applies to Section 6 of Elster's Proposal, Elster's "Pricing Response," which includes detailed pricing information derived from proprietary formulae and data research.   Elster's could lose

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 12
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

competitive advantage if such detailed proprietary information is publically revealed to other persons including Elster's competitors. [Henes Decl. at ¶¶ 8-26].

Further, an un-redacted disclosure of Elster's pricing information and other Proposal sections would result in "public loss" because publically revealing Elster's pricing terms, pricing methodology and other related information could limit Elster's ability to accommodate the requirements of public utility customers like Seattle City Light.  Un-redacted disclosure of the entire un-redacted Proposal could force Elster to alter its business practices in a way that would make less favorable pricing terms available to public utilities such as SCL.  [Henes Decl., ¶ 31]. *See e.g., Servais v. Port of Bellingham*, 127 Wn.2d 820, 904 P.2d 1124 (1995) (affirming the trial and appellate courts' conclusion that "private developers would benefit by insight into the Port's negotiating position if the financial data were disclosed, thereby resulting in a loss to the public.").

E. **Elster will Suffer Irreparable Harm from Wrongful Disclosure of Trade Secrets and Confidential Information.**

"Irreparable harm exists where monetary damages provide inadequate relief, such as cases involving environmental damage or human suffering." *Ossur Holdings, Inc. v. Bellacure, Inc.*, No. C05-1552JLR, 2005 U.S. Dist. LEXIS 38750, at *20 (W.D. Wash. Dec. 14, 2005). "An intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost always certainly show irreparable harm." *Pac. Aero. & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1198 (E.D. Wash. 2003) (*citing Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 92-93 (3rd Cir. 1992); *North Atlantic Instruments, Inc. v. Haber,* 188 F.3d 38, 49 (2nd Cir. 1999) (loss of trade secrets cannot be measured in money damages)).

Here, disclosure of the methods and techniques concerning Elster's smart meter technology, including how its smart meters communicate with each other and to the head end system, would significantly compromise Elster's ability to compete in the marketplace.

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 13
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

Likewise, Elster's position in the world-wide marketplace in which it competes would be substantially compromised by disclosure of Elster's "Roadmap" development plan, or disclosure of proprietary pricing information concerning Elster's hardware, software and various services, would significantly compromise Elster's ability to compete in the marketplace. Moreover, Elster's Proposal include technology trade secrets which detail the methods and techniques of Elster's system security, and disclosure of this highly sensitive and confidential system security information could be used by hackers to exploit potential exposure points in the system and compromise the security of Elster's customers.

In short, Elster will incur harm immeasurable in money damages if SCL is not prohibited from wrongfully misappropriating or disclosing trade secrets and confidential information. Once Elster's proprietary information is in the public domain, it cannot be retrieved – the epitome of the proverbial bell that cannot be un-rung. No amount of money can compensate for the loss of the economic and competitive advantage Elster derives from the trade secrets and other proprietary and confidential information contained within the RFP Proposal.

F. **The Balance of Equities Favors Allowing Elster to Protect its Trade Secrets and Confidential Information.**

Balancing the equities in this case requires measuring the MuckRock Defendants' right, if any, or the right of any general member of the public to obtain a copy of Elster's un-redacted bid documents against Elster's rights to protect its trade secrets and confidential information to prevent the unauthorized use of its trade secrets and confidential information by keeping that confidential information out of the hands of unqualified third parties. The equities weigh heavily in favor of issuing at least an immediate temporary restraining order – to be followed by preliminary or permanent injunctive relief.

The commercially sensitive and proprietary portions of Elster's bid documents serve absolutely no public interest because <u>Elster was not the winning proposer in response to SLC's</u>

{00244423-2}
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 14
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

RFP and is <u>not currently under contract with SLC or the City of Seattle for RFP SCL-RFP3404</u>. Elster is not currently performing any work for SLC or the tax payers of Seattle pursuant to SLC's RFP so it stands to reason that general members of the public and/or tax payers such as Defendant Mocek would have no interest in the commercially sensitive and proprietary portions of Elster's bid documents other than to attempt to compromise Elster's ability to compete in the market place in the future by making the proprietary and commercially sensitive information contained in Elster's bid documents available to the public or Elster's competitors. The Muckrock Defendants routinely engage in this commercially irresponsible practice by routinely utilizing the PRA (and other similar statutes in other states) to obtain bid documents from public projects such as SLC's RFP and then post these documents on their website for the general public (and Elster's competitors) to view [*see* www.muckrock.com]. As a compromise to full disclosure of Elster's bid proposal, Elster offered to permit SLC to provide Muckrock and Mocek with a copy of the portions of its bid which do not contain commercially sensitive and proprietary information.3   The Muckrock Defendants refused this compromise which is why Elster was forced to seek a temporary and permanent injunction preventing the release of the commercially sensitive and proprietary information at issue *sub judice*. Under the circumstances set forth above, the equities weigh heavily in favor of issuing at least an immediate temporary restraining order – to be followed by preliminary or permanent injunctive relief.

### G. A Temporary Restraining Order and Preliminary Injunction are in the Public's Interest.

A temporary restraining order or preliminary injunction, if issued, would not impact or adversely affect the public interest. Indeed, the public interest will be best served by the granting of the injunctive relief for the following reasons. First, this Court has ruled that "[t]he public has

---

3 The Commercially sensitive and proprietary portions of Elster's bid would be redacted and all other section would be produced in their entirety.

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 15
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

an interest in enforcing statutory obligations under the Uniform Trade Secrets Act." *U.S. Water Servs. v. Itoh*, 2011 U.S. Dist. LEXIS 27382; *see also PAWS II*, 125 Wn.2d at 263 ("[T]he legislature declares it ***a matter of public policy that the confidentiality of such information be protected and its unnecessary disclosure be prevented.***"). Accordingly, the public interest requires that a temporary restraining order and a preliminary injunction be granted to allow time for the parties and the Court to determine which records would properly be disclosed and which records are exempt and should be "withheld" or redacted.

### IV.   NOMINAL SECURITY

Because SCLs costs or damages will, at most, be nominal even in the unlikely event that it is found that SCL has been "wrongfully enjoined or restrained" by the requested temporary restraining order during the limited period of its duration, the Court is requested to exercise its discretion under Fed. R. Civ. P. 65(c) to properly set the security to be given by Elster in support of the requested temporary restraining order at zero. *See Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999); *see also Stockslager v. Carroll Elec. Co-op. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976) (amount of bond required upon the issuance of a preliminary injunction vests within the sound discretion of the trial court and will not be reversed on appeal unless there is a clear abuse of discretion).

Here, the purpose of the requested temporary restraining order is to, at minimum, preserve the *status quo* and ensure that Elster's trade secrets, proprietary information and other sensitive confidential information are protected from public disclosure at least until a hearing on the requested preliminary injunction can be had. It is unlikely that SCL will suffer any harm as a result. In the absence of evidence regarding likelihood of harm, the bond amount may be appropriately fixed at zero. *See Hoechst Diafoil Co, v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999) ("the amount of the bond, then ordinarily depends on the gravity of the potential harm to the enjoined party … Where the district court determines the risk of harm is

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 16
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

remote, or that the circumstances otherwise warrant it, the court may fix the amount of the bond accordingly. In some circumstances, a nominal bond may suffice," *citing* Charles Alan Wright et al., *Federal Practice & Procedure* § 2954, at 292 (2d ed. 1995)); *International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974) (approving district court's fixing bond amount at zero in the absence of evidence regarding likelihood of harm).

## V. CONCLUSION

Under either the traditional test for issuing a temporary restraining order or viewing the issue on a "sliding scale," the facts and circumstances support issuing temporary and preliminary injunctive relief. Specifically, Elster is entitled to an order: follows:

(i) A temporary restraining order enjoining SCL from releasing or otherwise disclosing any confidential financial, commercial and proprietary information, including without limitation any trade secret information, contained in documents Elster submitted to SCL in connection with SCL's RFP for "SCL-RFP3404, Advanced Metering Infrastructure," to preserve the status quo until such time that a hearing can be held on a preliminary and/or permanent injunction; and

(ii) an Order to Show Cause why a preliminary and/or permanent injunction should not issue enjoining SCL not to release or disclose, with regard to a request made pursuant to RCW Chapter 42.56, any confidential financial, commercial and proprietary information, including without limitation any trade secret information, contained in documents Elster submitted to SCL in connection with Elster's RFP for "SCL-RFP3404, Advanced Metering Infrastructure."

///
///
///
///

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING
ORDER - 17
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822

| | |
|---|---|
| 1 | Dated: May 25, 2016 |

                        GORDON & REES LLP

By:   */s/Allen W. Estes III*
       Allen W. Estes III WSBA #34526

By:   */s/John V. Leary*
       John V. Leary WSBA #36345

Attorneys for Plaintiff ELSTER SOLUTIONS, LLC
Gordon & Rees LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Phone: (206) 695-5100
Fax: (206) 689-2822
aestes@gordonrees.com
jleary@gordonrees.com

---

{00244423-2 }
PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER - 18
(2:16-cv-00771)

**GORDON & REES**
LLP
701 5th Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5100
Facsimile: (206) 689-2822